BOARD OF EDUCATION OF RIVERVIEW COMMUNITY CONSOLIDATED SCHOOL DISTRICT, Plaintiff-Appellant, *v.* THE COUNTY OF WOODFORD *et al.*, Defendants-Appellees.

(No. 12170;

Fourth District—June 3, 1974.

*Rehearing denied July 3, 1974.*

SIMKINS, J., dissenting.

James S. Dixon, of Peoria, for appellant.

Samuel G. Harrod, of Eureka, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The plaintiff, Board of Education of Riverview Community Consolidated School District No. 2 of Woodford County, filed a complaint for declaratory judgment naming as defendants the county of Woodford, the county clerk, the county zoning enforcing officer, and the owner and proposed purchaser of certain real estate located both in the county and in the school district. By its complaint, the Board of Education sought a declaration that the approval by the county board of supervisors of a special use of certain described real estate was illegal and void and sought a declaration to that effect. The complaint further sought to have a declaration that the real estate involved revert to its prior zoning classification—agricultural district—and that the county zoning officer be restrained from issuing any use permits pursuant to the special use authorization.

The complaint for declaratory judgment attacked as illegal and contrary to public policy the action taken at a special meeting of the board of supervisors of the defendant county at which time the special use was approved. It is alleged that the county clerk sent an itemized bill for expenses of this special meeting, amounting to $400.65 which included a per diem salary of all the board members present, to the attorney for the petitioners seeking the special use change and that the bill was paid in full. Further it is alleged that the special meeting was held only after the petitioners in the zoning matter agreed to pay the expenses of the meeting which said agreement is alleged to be contrary to public policy and the ordinance granting the special use under such circumstance is alleged to be void. Count II of the complaint for declaratory judgment attacked the jurisdiction of the county board to grant the special use and sought like relief as that requested in Count I. Among the exhibits attached to the complaint was a bill from the county clerk to the attorney for Peoria Concrete Construction Company indicating the expenses of the meeting together with the per diem expense of each member present. It is indicated on the bill that the same was paid on March 14, 1972. The defendants filed a motion to dismiss the complaint and in that motion asserted that the plaintiff Board of Education was without authority to commence an action challenging the validity of the zoning change. The trial court sustained the motion and dismissed the cause. This appeal is from the final judgment thus entered.

The trial court in its memorandum opinion found that the school board had standing to bring the suit as a local governmental unit since zoning controls the uses of land and the exercise of the zoning power would determine the density of population and hence the number of school age children in the district, but concluded that it was compelled under the case of *Dato v. Village of Vernon Hills*, 62 Ill.App.2d 274, 210 N.E.2d 626, to conclude that the Board of Education lacked statutory authorization to institute this proceeding and thus the action had to be dismissed. In so holding, the trial court noted that if this were a case of first impression, the court would be persuaded that the School Code gave authority to the Board of Education to institute and pursue this litigation, but that the *Dato* case compelled the court to reach a different result.

In *Dato*, the school board sought to intervene in a pending zoning case. The trial court denied it the right to intervene and the appellate court affirmed. The specific holding there was to the effect that section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, par. 26.1), being the section of the Civil Practice Act relating to intervention did not permit of intervention by the school board as a matter of right. The school board did not bring itself within any of the three circumstances set forth in the relevant provision of the Practice Act. In the course of its opinion, by dictum, the appellate court did state that a school district derived its existence and powers wholly from the General Assembly and that absent specific legislative authorization, the Board of Education could not engage in litigation resulting from zoning disputes, even though the Board had an interest in the outcome of that litigation. The court noted that section 11—13—20 of the Municipal Code (Ill. Rev. Stat. 1963, ch. 24, par. 11—13—20), then authorized—and still does authorize—a school district to appear and present evidence before a zoning commission board of appeals or commission or committee designated to hear zoning matters. The absence of statutory authorization to pursue the matter further was thought to preclude the school board from intervention in the *Dato* case.

The appellate court in the course of its opinion did not discuss that portion of the School Code that permits the directors of each school district as a body politic and corporate to sue and be sued in all courts and places where judicial proceedings are had. Ill. Rev. Stat. 1971, ch. 122, par. 10—2.

We agree with the trial court in its determination that the nature and extent of the interest here involved are worthy of concern to and protection by the school board. We are aware of the cases that hold that a school board is without authority to institute suits to recover unpaid

taxes. *Board of Education v. Home Real Estate Improvement Corp.*, 378 Ill. 298, 38 N.E.2d 17.

■■ Our study of *Dato* leads us to the conclusion that the court was there concerned specifically with the right of the school board to intervene in existing zoning litigation as a matter of right within the purview of the Civil Practice Act. Furthermore, the court there did not specifically discuss the general grant of authority to the Board of Education to sue and be sued. In this connection there is necessarily a distinction between capacity to bring the lawsuit and a direct interest sufficient to establish a right to a remedy. The plaintiff can have capacity to sue but have an interest so remote as to preclude relief. The sufficiency of the interest here sought to be vindicated must await a determination upon the merits. We hold only that the Board of Education had capacity to initiate the proceedings.

■■ In this case, the school board through declaratory judgment seeks to attack the validity of the special use under various alleged limitations of power as to the county board. It seeks to have the special use declared to be invalid because of the peculiar circumstances as set forth above with reference to payment of the costs of the special meeting. In our opinion the grant of power to a school board as a body politic and corporate to sue and be sued in all courts and places where judicial proceedings are had is broad enough to encompass authorization to institute and pursue this litigation. The interests that the school board seeks to vindicate were, as the trial court found, direct and substantial and necessarily relate directly to the duties and responsibilities of the Board of Education. We can perceive of no distinction with reference to the authority to sue between the interest here sought to be protected and the usual interest that would be protected by way of a contract action against a supplier of goods or services to the school board. Accordingly, the judgment of the circuit court of Woodford County dismissing the complaint for declaratory judgment is reversed and this cause is remanded to that court with directions to overrule the motion to dismiss and for further proceedings.

Reversed and remanded with directions.

TRAPP, P. J., concurs.

SIMKINS, J., dissenting:

I dissent. I read *Dato v. Village of Vernon Hills*, 62 Ill.App.2d 274, 210 N.E.2d 626, to hold that a school district, absent *specific* legislative grant, is without authority to engage in litigation relating to zoning. Counsel presented no other opinions of any reviewing court which bear directly

on the point nor has our research yielded additional authority. The trial judge, under the mandate of *U.M.W. Union Hospital v. District No. 50, U.M.W.*, 52 Ill.2d 496, 288 N.E.2d 455, was bound to follow *Dato,* and this court is similarly obliged to affirm even though we might be in disagreement with *Dato.*

Even if the trial judge and this court were not bound by *Dato* I would affirm. The majority interprets section 10—2 of the School Code (Ill. Rev. Stat. 1971, ch. 122, par. 10—2), as a general, unrestricted grant of authority to school districts to engage in litigation concerning zoning, yet this opens the door for a school district to intervene in any zoning matter which concerns property lying within its boundaries. The majority opinion states, "We agree with the trial court in its determination that the nature and extent of the interest here involved are worthy of concern to and protection by the school board. * * * The interests that the school board seeks to vindicate were, as the trial court found, direct and substantial and necessarily relate directly to the duties and responsibilities of the Board of Education." My difficulty with this statement is that I find it impossible to discern from a reading of the complaint, what interests the school district is seeking to vindicate and precisely what duties and responsibilities are involved. Count I of the complaint simply alleges that Peoria Concrete Products, during a meeting of the Board of Supervisors, offered to, and subsequently did through their attorney, pay to the county treasurer the costs of a special meeting of the Board held February 28, 1972. Count I further alleges that the meeting, under these circumstances, constituted "* * * a procedure not recognized or called for in any rule or regulation of the County Board, but contrary to all motions of public policy, the said ordinance granting the Special Use is void and illegal as against public policy." Count II of the complaint alleges that application for the special use was insufficient under the provisions of the County Zoning Ordinance; that the Board of Supervisors, at the time of granting the special use failed to make certain findings as required by the ordinance; and that other requirements of the ordinance were not met and that the Board of Supervisors was consequently without jurisdiction to consider the application for special use or to grant the same. In neither count is there a single reference to any interest, duty or responsibility of the school district. There is not a single allegation that the school district is affected in any way whatsoever by the granting of the special use. I am consequently unable to determine the nature of the direct, substantial interest which "necessarily" relates to the duties and responsibilities of the Board of Education which the majority somehow discerns. It also states, "We can perceive of no distinction with reference to the authority to sue between the interest here

sought to be protected and the usual interest that would be protected by way of a contract action against a supplier of goods or services to the school board." I see no similarity. To analogize the right of the school district to sue for breach of a contract to which it is a party, to a right to seek declaratory judgment in a zoning case employs a logic which escapes me.

For the foregoing reasons, I would affirm the judgment of the trial court.