THE VILLAGE OF PARK FOREST, Plaintiff-Appellant, *v.* THE COUNTY OF WILL *et al.*, Defendants-Appellees.

Third District   No. 75-249

Opinion filed May 21, 1976.

Dunn, Stefanich, McGarry, & Kennedy, Ltd., of Joliet (Harry Leinenweber, of counsel), for appellant.

Martin Rudman, State's Attorney, of Joliet (Jose Numes, Assistant State's Attorney, and B. R. Tongren, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal involves the proper interpretation of section 5 of "An Act in relation to county zoning" (hereinafter referred to as The County Zoning Act) (Ill. Rev. Stat. 1971, ch. 34, par. 3158), pertaining to requirements for validly amending a county zoning ordinance.[1] Defendant Herbert Paul is the owner of a rural parcel located within 1½ miles of the municipal limits

of plaintiff, Village of Park Forest. On his application for rezoning, defendant county amended its zoning ordinance to reclassify the tract from a farming district (F) to a business district (B-1a) by 19 "yea" votes against 5 "nay" votes of members of the county board. Because of its proximity to the village limits, the village considered the parcel within its zoning jurisdiction and by its comprehensive zoning plan had previously designated this parcel for single-family residential uses. Accordingly, by resolution of its president and board of trustees, the village objected to any amendment by the county of the latter's zoning regulations pertaining to the subject parcel, and a certified copy of this resolution was filed with the county clerk before the defendant board held its hearing on the application for amendment.

It is the village's contention that by reason of its filed written protest, the county board's action in passing the amendment was invalid because of its failure to receive the favorable vote of three-fourths of the members of the board (*i.e.*, 21), as required by section 5 of the County Zoning Act (Ill. Rev. Stat. 1971, ch. 34, par. 3158). Accordingly, the village filed a complaint for declaratory judgment that the county's amending ordinance was invalid and to enjoin the county and defendant Raymond Hulbert, its zoning officer, from issuing any building permits allowing any construction on the tract which might be permissible under the county's B-1a zoning. Thereafter, the village and defendant Paul each filed a motion for summary judgment. There is no evidence in the excerpts filed here that the county or its zoning officer appeared, answered or otherwise resisted these motions. The trial court found no genuine issue of fact is involved. After hearing, the circuit court denied the motion of the village but entered summary judgment for Paul. The village has perfected this appeal.

The sole question is whether section 5 requires that the protest of the village be "signed and acknowledged" by its president and all members of the board of trustees. If it does, the filing of a certified copy of its resolution of protest with the county clerk was inadequate to require the favorable vote of three-fourths of the members of the county board for passage of the amendment, and the county's act of rezoning was, therefore, valid. If, however, the filing of a certified copy of the village's resolution of protest was sufficient compliance with the statute, then 21

---

[1] In relevant portions, the statute reads: "In case of written protest against any proposed amendment, signed and acknowledged by the owners of twenty percent of the frontage proposed to be altered, or by the owners of twenty percent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty percent of the frontage directly opposite the frontage proposed to be altered, or in cases where the land affected lies within one mile and one-half of the limits of a zoned municipality, by the city council or president and board of trustees ° ° ° filed with the county clerk, such amendment shall not be passed except by the favorable vote of three-fourths of all the members of the county board."

favorable votes of county board members were essential for validity and the 19 favorable votes actually received were insufficient for passage.

The circuit court concluded in its written opinion that the village's protest was required to have been signed and acknowledged by its president and all members of the board of trustees, that the certified copy of their resolution of protest was inadequate, and that the vote of the county board was therefore valid even though effected by less than the favorable vote of three-fourths of all its members.

We take an opposite view of the meaning of the statute. It exhibits, in its first part, a legislative intent to protect the same four classes of property owners as are given protection against municipal rezoning under parallel language and provisions of section 11—13—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—13—14).[2] In *Bredberg v. City of Wheaton*, 24 Ill. 2d 612, 622, 182 N.E.2d 742 (1962), the supreme court said of this language in the Illinois Municipal Code (which was then contained in section 73—8 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, ch. 24, par. 73—8)) that it shows "an intention * * * to protect four classes of owners against changes in zoning boundaries: (1) The owners of the frontage proposed to be altered; (2) the owners of frontage immediately adjoining the property proposed to be altered; (3) the owners across an alley from such property; and (4) the owners of the frontage directly opposite the frontage proposed to be altered. To insure uniformity the required percentage in the statute [*i.e*, the 20% factor], referring to frontage, is in each instance necessarily intended to apply to the amount of frontage of those protesting * * *." Accordingly, in that case, where the Bredbergs (who were owners of 50% of the frontage on a tract proposed to be altered) had filed a written protest with the city clerk, it was held that the favorable vote of only three against two by a five-man city council was insufficient to meet the requirements for a favorable vote of two-thirds of the council.

■■ This same legislative intent to protect the same four classes of property was carried into section 5 of the County Zoning Act, pertaining to amendments of county zoning ordinances, and identical language was used to express that intent. In addition, however, the county zoning ordinance recognizes the need of extending protection, also *to another distinctly different category of interests, i.e.,* to certain municipalities where the land affected lies within 1½ miles of its limits. (*Village of*

---

[2] In its relevant recitals this statute provides: "In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by the owners of 20% of the frontage proposed to be altered, or by the owners of 20% of the frontage immediately adjoining or across an alley therefrom, or by the owners of 20% of the frontage directly opposite the frontage proposed to be altered, is filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of the aldermen or trustees * * *."

*Riverwoods v. County of Lake,* 122 Ill. App. 2d 254, 258 N.E.2d 131 (2d Dist. 1970); *Forestview Homeowners Association, Inc. v. County of Cook,* 18 Ill. App. 3d 230, 309 N.E.2d 763 (1st Dist. 1974).) Accordingly section 5 of the County Zoning Act (Ill. Rev. Stat. 1971, ch. 34, par. 3158) confers the right of protest against a proposed county zoning ordinance to the category of interests consisting of the owners of four classes of property on the one hand, and on the other hand, also to certain municipalities as a different category. The location of the first comma in its pertinent provisions, and the insertion of the subsequent words "or in cases where the land affected lies within one mile and one-half * * * *," creates the controlling bifurcation whereby the words "signed and acknowledged by the owners" pertains only to protests in *cases* involving the four classes of protected property, while in *cases* of written protest by certain protected municipalities, the only requirement, except for filing, is that it be made by the appropriate municipal officials, *i.e.,* "by the city council or president and board of trustees," as the case may be.[3]

■■ While section 5 does require the filing of a municipal protest with the county clerk as a means of giving notice to the county board of valid municipal action, it does not purport to prescribe that a municipal resolution otherwise conforming with requirements of law for validity and passage is without legal effect unless it meets a higher standard of being signed and acknowledged by *all* the corporate authorities. Neither can it be construed to mean that a written protest *privately* circulated and signed by the president and all trustees will constitute a valid corporate act for any purpose. A municipal corporation validly acts by ordinance or resolution at an open public meeting, and nothing in this statute can be construed as intending to alter or modify that law.

The judgment of the circuit court is reversed and the cause is remanded with directions to enter judgment in favor of the plaintiff and against all the defendants for the relief prayed.

Reversed and remanded with directions.

ALLOY, P. J., and STENGEL, J., concur.

---

[3] Section 5 is thereby construed to read:
"In case of written protest against any proposed amendment, [a] signed and acknowledged by owners of 20% of the frontage [of certain categories of land], or [b] in cases where the land affected lies within one mile and one-half of the limits of [certain categories of municipalities, *i.e.,* those zoned and with limits nearest adjacent] by the city council or president and board of trustees * * * filed with the county clerk, such amendment shall not be passed except by the favorable vote of three-fourths of all members of the county board." (Emphasis added.) The comma after "amendment" requires that the following words "signed and sealed" be related only to category [a], *i.e.,* certain owners, while the subsequent words "or in cases where the land affected" distinguishes a separate category of interests consisting not of "owners" who should "sign and acknowledge" for identification, but of certain municipalities identifiable by their proximity to the land affected.