(No. 34016.—

WILLIAM J. DOWSETT *vs.* THE CITY OF EAST MOLINE *et al.*,
Appellees—(EUGENE FRENCH *et al.*, Appellants.)

*Opinion filed May 23, 1956—Rehearing denied June 15, 1956.*

562

KLINGBIEL, J., took no part.

EDWARD J. TURNBAUGH, of Moline, for appellants.

HUBER, REIDY & KATZ, of Rock Island, and ROY H. GLOCKHOFF, of East Moline, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Eugene French, intervening plaintiff, and others appeal directly to this court from decrees of the circuit court of Rock Island County entered on December 2, 1955, and January 25, 1956, holding a proposed waterworks revenue-bond-issue ordinance of the city of East Moline and a referendum election in support thereof valid and denying an injunction restraining the issuance of such bonds.

The trial judge has certified that the validity of an ordinance of the city of East Moline is involved and that in his opinion the public interest requires an appeal be taken direct to this court. Consequently, this court properly has jurisdiction of this appeal.

On March 15, 1955, the city council of East Moline adopted and the mayor approved an ordinance providing for the issuance of $1,050,000 waterworks revenue bonds in order to provide for certain waterworks improvements and the required publication thereof was duly made. Thereafter a petition for referendum on said ordinance was filed within the required statutory period.

. On April 12, 1955, the city council adopted an ordinance calling a special election to vote on the bond issue for May 3, 1955. Said ordinance consisted of seven numbered sections: section 1 calling the special election and directing the clerk to publish notice thereof; section 2 speci-

fying the question to be submitted, the hours the polls were to be open and the number of precincts to be used; section 3 specifying verbatim the notice of special election to be published by the clerk; section 4 naming specific persons as judges and clerks for the specified precincts; section 5 specifying verbatim the form of ballot to be used; section 6 directing the clerk to cause publication of a sample ballot; and section 7 providing for the ordinance to be effective immediately upon passage and approval.

Thereafter, on April 14, 1955, the clerk caused the complete ordinance calling said special election to be published once, which ordinance contained within its text the verbatim form of notice for the special election to be held on May 3, 1955. The city clerk on April 28 caused a sample of the ballot to be used in said special election to be published, but at no time did the clerk publish any notice of election other than that contained in the publication of the ordinance calling the special election.

On May 3, 1955, a special election was held wherein 2,261 total votes were cast, there being 1,217 votes in favor of the bond issue and 1,022 against.

On November 29, 1955, the plaintiff, as a citizen, voter, resident and taxpayer of the city of East Moline, filed his complaint praying that the issuance of said waterworks revenue bonds be enjoined, in which complaint the only issue raised was the validity of the publication in full of the ordinance calling the special election as a valid notice of said special election. Summons was duly issued returnable December 19, 1955, and January 2, 1956, and was served on the city clerk on November 29, 1955, the date of filing the complaint.

On December 1, 1955, a verified answer was filed by the defendants admitting most of the allegations in the complaint and contending that the notice of election was valid.

On the next day, December 2, 1955, evidence was heard and a decree entered by the trial court finding that there was extensive publicity prior to the election and a heavy vote at the election, that no more voters would have participated had a notice of special election been published without reference to the ordinance and decreed that the special election was, in all respects, legal and valid, denying the prayer for injunction and dismissing the complaint.

On January 3, 1956, Eugene French filed his motion for leave to intervene and to vacate the decree for want of jurisdiction or, in the alternative, to open up the decree with leave to plead and file a cross complaint for declaratory judgment. In said motion the intervenor alleged that he was a water rate payer, that the plaintiff in the original complaint was an open and active proponent of the proposition voted upon, that the suit was instituted as a "friendly suit" and hearing had thereon prior to the return date for the purpose of obtaining an adverse adjudication and to cut off the normal time for intervention by those desiring to litigate in good faith, that the plaintiff therein had no standing to enjoin the issuance, that the court had no jurisdiction, that the court went beyond the only issue tendered, that the sample ballot was not published, that the precinct boundaries were inaccurate so as to invalidate the election, that the council abused its discretion in setting the election only 18 days after publication, and generally that the entire procedure was collusive and fraudulent.

On January 11 defendants moved to strike the said petition for leave to intervene, in which motion it is alleged among other things that the petition for intervention came too late after final decree and that the issues sought to be raised were decided in the main suit.

On January 13, 1956, French was granted leave to make his petition to intervene comply with section 26.1(5) of the Civil Practice Act as amended (Ill. Rev. Stat. 1955, chap. 110, par. 26.1,) and his affidavit at that time sets

forth that the circuit clerk's office was closed January 1 and 2, and that the filing of his motion on January 3, 1956, was within thirty days of the entry of the decree on December 2, 1955.

On January 17, 1956, the trial court entered an order granting leave to French to intervene as a plaintiff provided that in the event defendants answered intervenor's original pleading within two days and proceeded without delay to final hearing thereon the next day, January 20, 1956, that then the intervenor should be bound by the date of entry of the original decree and the time limited by law for filing notice of appeal therefrom.

On January 18, 1956, the defendants filed their answer to intervenor's motion to vacate the decree and on January 20 intervenor's motion to vacate the prior decree for want of jurisdiction was denied, and a further hearing was held before the trial court on the alternative prayers.

On January 25, 1956, the trial court entered a decree finding that no grounds had been shown for vacating or disturbing the prior decree and ordering that the decree of December 2, 1955, remain in full force and effect as of the date of entry thereof, that it was binding on all parties including the intervenor and remained the final decree of the court as of December 2, 1955.

On February 27, 1956, notice of appeal from both the final decree of December 2, 1955, and the decree of January 25, 1956, were filed.

Appellants assign three propositions as errors as follows:

1. The trial court erred in specifying that the decree of January 25, 1956, was retroactive as of December 2, 1955.

2. That the trial court erred in denying intervenor's motion to vacate the decree of December 2, 1955, for the reason that neither plaintiff-appellee nor any other taxpayer, citizen, resident or voter of the city of East Moline were proper parties to bring the proceeding for injunction and

it does not appear that they have any interest in the revenues of the waterworks from which the bonds are to be repaid or that they have suffered special damages.

3. In the alternative, that the court erred in denying the injunction and dismissing the complaint and adjudging the special election valid because the special election was not valid as required by law.

In support of the alleged invalidity of the ordinance the appellants in their brief argue four propositions as follows: (1) deviation of ballot from statutory form; (2) lack of publication notice; (3) precinct boundaries insufficiently described, and (4) abuse of discretion in fixing election three weeks after adoption of the ordinance.

The original complaint in this case was filed as a friendly suit by the nonappealing plaintiff in a representative capacity as a citizen, taxpayer and voter. The motion of the intervening plaintiff, appellant herein, for leave to intervene and to vacate the decree for want of jurisdiction or, in the alternative, to open up the decree with leave to plead and file a cross complaint was filed on January 3, 1956, after entry of final decree on the original complaint by the trial court on December 2, 1955. The trial court on January 17, 1956, formally granted leave to intervene as a matter of right under section 26.1(1) of the Civil Practice Act as amended after finding that the representation of said appellant's interest by the existing parties is, or might be, inadequate and that said appellant would, or might be bound by the prior judgment of the court. The record fully sustains the finding of the court in that respect. However, the trial court in granting such leave to intervene affixed conditions to the order that the intervenor should be bound by the date of entry of the original decree on December 2, 1955, and the time limited by law for filing notice of appeal therefrom. Such qualification of the order granting leave to intervene was apparently made by the trial court pursuant to the authority granted in section

26.1 (6) of the Civil Practice Act as amended, wherein it is provided that an intervenor shall have all the rights of an original party except that the court may in its order allowing intervention provide that the applicant shall be bound by orders, judgments or decrees theretofore entered or that in other respects the application shall not interfere with the control of the litigation as justice and the avoidance of undue delay may require.

Section 26.1 of the Civil Practice Act above referred to is new and was effective as of the 1st day of January, 1956, and provides a modern intervention practice for Illinois analogous to that prevailing in other States and Federal rules of civil practice. Under prior law the right to intervene was severely limited by the decisions of this court in *Bernero* v. *Bernero,* 363 Ill. 328, and *Hairgrove* v. *City of Jacksonville,* 366 Ill. 163. This section now provides an intervention remedy of liberalized scope but grants the trial court the power to prevent intervention from unduly hampering or delaying the original plaintiffs in their conduct of the litigation. However, in interpreting and applying said section in a particular case the entire Civil Practice Act and its provisions must be considered. Inasmuch as January 1 and 2, 1956, were each legal holidays (Ill. Rev. Stat. 1955, chap. 98, par. 18,) they should be excluded in computing the 30-day period prescribed by section 68.3 of the Civil Practice Act as amended (Ill. Rev. Stat. 1955, chap. 110, par. 68.3,) for filing motions for rehearing, retrial, modification of decrees, or vacation of decrees, and the trial court properly so found in allowing the motion to intervene.

We are of the opinion that the trial court properly held that its power under section 26.1 to condition the right to intervene upon "the avoidance of undue delay" included authority to shorten the time normally fixed by the statute and rules for the filing of a notice of appeal. But we are of the opinion that the court improperly exercised its discretion in fixing the time within which an appeal was to

be taken at the outset before it could be known whether or not the period fixed would be adequate. In this instance there did remain a brief interval for the filing of the notice of appeal before the time limit fixed in the earlier order expired. But it could well be that the hearings would not have been concluded before the time within which the appeal was required to be taken had expired. The appropriate way to handle this problem is for the judge to condition leave to intervene upon a curtailed period for appeal, and then to fix the actual time for filing notice of appeal, at the time that final disposition of the case is made. We hold, therefore, that the present appeal is properly before us.

Although appellants in their brief state that they do not desire decision of this appeal on the point of proper party plaintiff and want of jurisdiction, intervening plaintiff-appellant's motion to vacate for want of jurisdiction is based on the prior decisions of this court in *Price* v. *City of Mattoon*, 364 Ill. 512, and *Bowes* v. *City of Chicago*, 3 Ill.2d 175. In the *Bowes case* this court held that plaintiffs suing as taxpayers to enjoin the construction of a water filtration plant in the Chicago harbor were proper plaintiffs because the city by its contracts and agreements with the Federal government had obligated general funds of the city although the construction itself was to be from water plant revenues. Here we have the general fund of the city involved because the ordinance binds the city to pay from the general funds for the water used in the fire hydrants and for other city purposes. In the *Bowes case* the involvement of the general funds of the municipality was more speculative and contingent than the situation here presented. We feel, therefore, that a consideration of the issues involving the merits is appropriate.

After having examined the record and cited authorities, it is our opinion that the trial court correctly decided the issues presented to it by both the original and intervenor's pleadings. No issue was raised by the pleadings, argued,

or passed upon by the trial court concerning any alleged deviation of the ballot from any prescribed statutory form and consequently such is not an issue properly before this court. *People ex rel. Toman* v. *Belmont Radio Corp.*, 388 Ill. 11; *McNeil & Higgins Co.* v. *Neenah Cheese and Cold Storage Co.* 290 Ill. 449.

As to the argument that the publication of notice of election was illegal, there is no question that a notice was published which included the minimum statutory requirements. The objection made to the notice is the surplus information and verbiage contained therein relating to the proposed bond issue and election. The objection is not to want of notice, which is jurisdictional, but to what might be described as excessive notice. Cases cited where no notice was given are irrelevant. Where electors have been given notice of the time and place of holding an election and the question submitted, substantial compliance with the statute regarding notice is sufficient where no prejudice is shown. (*Fiedler* v. *Sanitary District of Bloom Township*, 359 Ill. 221; *Natural Products Co.* v. *Du Page County*, 314 Ill. 74.) No prejudice to the electors has been shown, but in fact the evidence discloses extensive publicity concerning the special election, general public interest therein, and a total vote vast of 2,261 at the special election out of 5,327 registered voters, while 2,403 voted at the general election held less than one month previously. Only 675 votes and 468 votes were cast at two previous special elections held in 1954 and 1950.

As to the alleged abuse of discretion by the city council in fixing the election date three weeks after adoption of the ordinance calling the election, the Revised Cities and Villages Act specifies no minimum or maximum period between adoption of such an ordinance and the election. The only pertinent statutory requirement is publication of notice at least once not more than 30 days nor less than 15 days in advance of the election. (Ill. Rev. Stat. 1955,

chap. 24, par. 9—3.) The publication was here made 18 days prior to the election, within the scope of time allowed by the statute. The statute is reasonable and valid and the criterion by which to judge validity of the election. The council has not abused its discretion so long as it has complied with the statutory time requirement on publication of notice.

The alleged insufficient description of precinct boundaries is not sustained by the evidence. The boundaries used were those for the regular election precincts in every general election for more than 30 years. The boundary lines had been observed and acted upon by voters and election officials at primaries and elections regularly, and were shown to be sufficient to be practical. Even though it is possible to point to errors of survey, and the boundaries may not meet the refined requirements of legal conveyancing, we must regard litigation or challenge of precinct boundary lines so long recognized as contrary to public policy, in the same manner as we regarded a similar challenge of county lines. (*Edwards County* v. *White County*, 85 Ill. 390.) Descriptions of municipal boundaries are not construed with the same strictness as those outlining boundaries in grants or contracts. (*People ex rel. Barrett* v. *Anderson*, 398 Ill. 480.) No showing has been made that voters were misled as to their designated polling places or that any voter was deprived of his franchise to vote by reason of insufficient precinct boundary descriptions.

The trial court decree denying the prayer for injunction and dismissing the complaint for want of equity is affirmed.

*Decree affirmed.*

Mr. JUSTICE KLINGBIEL took no part in the consideration or decision of this case.