THE CITY OF CHICAGO, Plaintiff, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY *et al.*, Defendants-Appellees (Joan P. Whitmer, Intervening Plaintiff-Appellant).

First District (5th Division)   No. 83—2237

Opinion filed August 17, 1984.—Supplemental opinion filed on denial of rehearing September 28, 1984.

Robert L. Graham, Richard J. Gray, and Ann C. Courter, all of Jenner & Block, of Chicago, for appellant.

John D. Lien, Randall S. Rapp, and Robert M. Gordon, all of Wilson & McIlvaine, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Petitioner Joan Whitmer appeals from an order denying her petition to intervene in this action for building code violations brought by the city of Chicago against owners and operators of the John Hancock Center. Petitioner challenges the trial court's finding that her interests will be adequately represented, and claims that denial of her petition was an abuse of discretion. The following facts are pertinent to our disposition.

Plaintiff city of Chicago (city) filed its complaint on July 22, 1983, and alleged that defendants, John Hancock Mutual Life Insurance Company, Sudler & Company, and Homeowners Association (hereinafter Condominium Association) failed to provide sufficient ventilation as required by the Municipal Code. Plaintiff seeks fines, injunctive relief, the appointment of a receiver and an order of demolition. Petitioner appeared at the first hearing in the case on August 16, 1983, and presented her petition to intervene along with her complaint. Petitioner alleges that she is a condominium owner in the Hancock Center and that her health, safety and property interests will be affected

by the outcome of the case; she seeks declaratory and injunctive relief.

Although the city did not actively oppose the petition, the assistant corporation counsel posited at a hearing on September 13, 1983, that the city adequately represented the health and safety interests of its citizens. Defendants opposed the petition, arguing that petitioner's property interest would be adequately represented by the Condominium Association and that intervention would unduly delay proceedings. Petitioner maintained that the city would not represent her particular health and safety interest and had failed to pursue discovery. She argued that the Condominium Association could not represent her because the association denied the existence of a violation whereas she sought to have the violation corrected. Petitioner stated that she would be prepared to go to trial on the date set, October 11, 1983.

The trial court denied the petition and stated that petitioner's rights would be adequately represented by the city and by the Condominium Association. Petitioner appeals.

OPINION

■ Section 2—408 of the Code of Civil Procedure provides in pertinent part:

"(a) Upon timely application anyone shall be permitted as of right to intervene in an action: *** (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action ***.

(b) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action : *** (2) when an applicant's claim or defense and the main action have a question of law or fact in common." (Ill. Rev. Stat. 1983, ch. 110, pars. 2—408(a)(2), 2—408(b)(2).)

Intervention statutes are remedial in nature and should be construed liberally "to allow a person to protect an interest jeopardized by pending litigation to which he is not a party or to avoid relitigation in another suit of issues which are being litigated in a pending suit." Ill. Ann. Stat., ch. 110, par. 2—408, Joint Committee Comments, at 462 (Smith-Hurd 1983); *Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 623, 182 N.E.2d 742.

■ Although courts have noted generally that intervention is committed to the sound discretion of the trial court (*e.g., University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 877, 392

N.E.2d 136), we believe that intervention as of right should be distinguished from permissive intervention insofar as the exercise of discretion is concerned. The statute establishes a minimal "commonality" requirement for permissive intervention, and expressly commits the decision whether to allow intervention or not to "the discretion of the court." (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(b).) With respect to intervention as of right, however, the statute directs that a person "shall be permitted as of right to intervene" upon certain conditions. (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(a).) We believe that the trial court's discretion is limited to determining timeliness, inadequacy of representation and sufficiency of interest; once these threshold requirements have been met, the plain meaning of the statute directs that the petition be granted.

The instant petition was filed within weeks of the commencement of the action, at the first hearing in the matter, and was timely beyond any doubt. We find little merit in defendants' contention that allowing petitioner to intervene would delay proceedings. The trial court is given broad power under the statute to prevent intervention from hampering or delaying the litigation (see Ill. Rev. Stat. 1983, ch. 110, par. 2—408(f)), and the record indicates that petitioner undertook diligent efforts to avoid delay, such as attending depositions, filing interrogatories and expediting disposition of the petition.

Further, we reject defendants' argument that the denial of the petition was warranted because petitioner would not be bound by the final judgment in this action. Section 2—408 requires only that a party seeking to intervene "will *or may be* bound" (emphasis added) (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(a)(2)), and it is settled that an enforceable right or tangible detriment fulfills the requirement. (See *Adams v. County of Cook* (1980), 86 Ill. App. 3d 68, 69-72, 407 N.E.2d 1018; Ill. Ann. Stat., ch. 110, par. 2—408, Joint Committee Comments, at 463 (Smith-Hurd 1983).) In *City of Chicago v. Zik* (1965), 63 Ill. App. 2d 445, 211 N.E.2d 545, this court reversed the denial of intervention in an action for building code violations and held that applicants' leasehold interests justified intervention as of right. By comparison, petitioner's ownership interest in the subject building is even more compelling. Regardless of the outcome of the litigation, the economic and possessory incidents of petitioner's ownership will be affected, as for example, by conforming or nonconforming ventilation, higher assessments, or altered resale value.

The crucial issue, therefore, is whether petitioner's interests are adequately represented by existing parties. Petitioner contends that the trial court erred in finding that her interests were represented by

adverse parties. She argues further that the city's representation is inadequate because its interest is in the public health and not petitioner's health, and because the city's representation has been ineffective. She maintains that the Condominium Association cannot represent her interest so long as it denies the existence of a violation. Defendants rejoin that the trial court was justified in finding that petitioner's interest in health and safety was adequately represented by the city, and her property interest was adequately represented by the Condominium Association.

Adequacy of representation is a complex matter, not subject to hard and fast rules; rather, courts consider a variety of factors, including the extent to which the interests of the applicant and of existing parties converge or diverge, the commonality of legal and factual positions, the practical abilities of existing parties in terms of resources and expertise, and the vigor with which existing parties represent the applicant's interests. (See Annot., 84 A.L.R.2d 1412 (1962).) Although these factors should be employed flexibly, "[t]he most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties." 7A Wright & Miller, Federal Practice & Procedure sec. 1909, at 524 (2d ed. 1972).

Illinois courts have been sensitive to the importance of a careful comparison of interests, and some general principles have emerged from the cases. If the applicant presents a unique interest, the presumption or inference is that existing parties do not adequately represent such interest. (*Adams v. County of Cook* (1980), 86 Ill. App. 3d 68, 407 N.E.2d 1018.) Conversely, where the applicant's interest closely corresponds to that of an existing party, adequate representation is inferred. (*Elmhurst-Chicago Stone Co. v. Village of Bartlett* (1975), 26 Ill. App. 3d 1021, 325 N.E.2d 412.) Where the interests of the applicant and an existing party are similar in some respects and different in others, the court should ask whether a reasonable person in the applicant's position would rely upon the existing party for representation. *Wert v. Burke* (1964), 47 Ill. App. 2d 453, 197 N.E.2d 717.

Applying these principles to the case at hand, we must conclude that the representation of petitioner's interest will or may be inadequate. Petitioner's particular interest in the health of her family far exceeds the city's interest in public health, and her property interest varies in significant respects from that of the Condominium Association. Therefore, the trial court's order denying intervention on ground of adequate representation was error.

We believe that the reasoning employed in zoning cases applies here. Although the local government unit adequately represents the health, safety and welfare interests of the general public and of distant landowners (see, *e.g., University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 392 N.E.2d 136; *Elmhurst-Chicago Stone Co. v. Village of Bartlett* (1975), 26 Ill. App. 3d 1021, 325 N.E.2d 412), our supreme court has consistently held that adjacent landowners are entitled to intervene because their particular interests extend beyond the public's interest. (*Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 495-96, 256 N.E.2d 1; *Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 623-24, 182 N.E.2d 742.) Similarly, petitioner's health and safety interest, by virtue of her possessory interest in a unit of the subject building, is more tangible and immediate than the interest of the public at large.

We find further support for our conclusion in interpretations of the analogous Federal intervention provision. (See Fed. R. Civ. P. 24(a)(2); Ill. Ann. Stat., ch. 110, par. 2—408, Joint Committee Comments, at 462 (Smith-Hurd 1983) (designed to be analogous).) In *Trbovich v. United Mine Workers of America* (1972), 404 U.S. 528, 30 L. Ed. 2d 686, 92 S. Ct. 630, the United States Supreme Court reversed the district court and held that a union member was entitled to intervene as a plaintiff in a suit between the government and his union, despite the fact that the Secretary of Labor was under a duty to represent union members' interests as well as the public interest. The court noted that the burden was upon the applicant to show that representation may be inadequate, but that the burden "should be treated as minimal." (404 U.S. 528, 538 n.10, 30 L. Ed. 2d 686, 694, 92 S. Ct. 630, 636.) The *Trbovich* court rejected the argument that the applicant's interest was the same as union members generally, and drew a distinction between the Secretary, charged with the public interest, and the applicant who sought to press his individual complaint. (404 U.S. 528, 536-39, 30 L. Ed. 2d 686, 693-95, 92 S. Ct. 630, 635-37.) Notably, the court did not even consider that the applicant's interest might be represented by his union, an adverse party.

In *Natural Resources Defense Council v. Costle* (D.C. Cir. 1977), 561 F.2d 904, the court held that applicants, rubber and chemical companies, should have been allowed to intervene in a suit brought by environmentalists to force the Environmental Protection Agency (EPA) to promulgate regulations. Recognizing EPA's good faith efforts in defending the suit and its interest in assuring that regulations would be lawful, the court stated that the differing scope of interests justified intervention. (561 F.2d 904, 912.) And in *Smuck v. Hobson* (D.C. Cir.

1969), 408 F.2d 175, parents were allowed to intervene on appeal where a school board declined to appeal. The court stated:

> "The school board represents all parents within the district. The intervening appellants may have more parochial interests centering upon the education of their own children. While they cannot of course ask the Board to favor their children unconstitutionally at the expense of others, they like other parents can seek the adoption of policies beneficial to their own children. *** And the Board of Education, buffeted as it like other school boards is by conflicting public demands, may possibly have less interest in preserving its own untrammeled discretion than do the parents." (408 F.2d 175, 181.)

In each of these cases, as in the zoning cases cited earlier, intervention was appropriate to protect a private interest notwithstanding the participation of a public body charged with representing a similar public interest.

Our careful consideration of the parties' interests in this case convinces us that petitioner should have been allowed to intervene to protect her unique interest. The city is charged with enforcement of its building code, but it is restrained by its conception of the public interest, which in turn is shaped by competing pressures from a large and diverse constituency. As zealously as the city may represent the health and safety interests of its citizens, it is limited in its allocation of resources and priorities by the public fisc. (See generally Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv. L. Rev. 721, 745-46 (1968).) We note that the city initiated discovery several days before the scheduled trial date in the instant cause, and although the city apparently opposed the petition to intervene, it submitted no motion nor memorandum to guide the trial court in disposing of the matter.

The case for representation of petitioner's interest by the Condominium Association is much weaker still. The Association denies the existence of a building code violation, and in what can only be seen as a study in understatement, characterizes its position relative to that of petitioner as "a difference of opinion." We consider a difference of opinion as to the existence of the condition which forms the basis of the lawsuit to be a strong indication that differing interests are at work.

We believe that the Association's representation of petitioner's property interest is or may be inadequate, quite apart from their adverse positions concerning the health issue. Our comments about the generalized nature of the city's interest have application here, also.

An association is not simply the sum of its members, and the leadership of an association does not necessarily reflect the views of its members. (See Note, *Associational Standing and Due Process: The Need for an Adequate Representation Scrutiny,* 61 B.U. L. Rev. 174, 179 (1981).) We need not stretch imagination to anticipate that a choice from among alternative solutions to the disputed ventilation problem, such as structural modification, purchase of additional equipment or alteration of operation and maintenance parameters for existing equipment, will entail conflicts between associational property interests and petitioner's property interest.

In contrast to the generalized interests represented by the city and the Condominium Association, petitioner claims direct health effects and integral property rights: her resources are narrowly focused upon admittedly selfish goals. We believe that differences in scope and intensity between the city's public health interest and petitioner's private health interest, and between the Association's property interest and petitioner's property interest, were and are meaningful so as to shed significant doubt on the adequacy of representation. Because petitioner's claim of inadequate representation is reasonable and well founded, and because statutory requirements of timeliness and sufficiency of interest were met, we hold that the trial court erred in denying the petition to intervene. We need not reach the issue of discretionary intervention, and so we do not.

For the foregoing reasons, the order of the circuit court is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

SULLIVAN and O'CONNOR, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE LORENZ delivered the opinion of the court:

In their petition for rehearing, defendants maintain that this court failed to consider the statutory requirement that the petitioner for intervention "will or may be bound by an order or judgment in the action." (Ill. Rev. Stat. 1983, ch. 110, par. 2—408(a)(2).) Although we believe that our analysis adequately addressed the issue, we take this opportunity to address new arguments presented by defendants' petition, in the interests of fullness and finality. We note, however, that the trial court's denial of the petition for intervention was based on the adequacy of representation.

■ Defendants argue that because we held petitioner's interest was not adequately represented, petitioner will not and cannot be bound by an order or judgment in this action. This reasoning proves too much: If inadequate representation negated binding judgment as these two ideas are used in the statute, then *no* petitioner could qualify for intervention as of right, and the statute would be a nullity. More important are the circumstances of this case. Petitioner owns a condominium unit in a building which the city alleges to be unhealthful; the city seeks fines, injunctive relief, and even an order of demolition. Whether relief is granted or the status quo preserved, this adjudication will directly and substantially affect the quality of the air in the building, the expense of belonging to the association, and the physical components (possibly the existence) of the building. It strains credulity to say that petitioner may not be bound by an order or judgment in this action.

Yet defendants argue stridently that "will or may be bound" requires that the judgment be *res judicata* as to a petitioner for intervention, and that this court has erred in relaxing the standard to "an enforceable right or tangible detriment." Defendants point to *Sam Fox Publishing Co. v. United States* (1961), 366 U.S. 683, 6 L. Ed. 2d 604, 81 S. Ct. 1309, which involved application of the predecessor Federal intervention rule in the context of a government antitrust suit. Defendants maintain that *Sam Fox* interpreted the rule upon which the Illinois intervention statute was founded, and that our reliance upon Federal cases interpreting the successor rule is misplaced.

Professor Sherman Cohn, then chairman of the Federal Bar Association Committee on Federal Rules and Procedure, stated with respect to the amendment of Fed. R. Civ. Pro. 24:

"The immediate motivation for the change in the rule was the Supreme Court's decision in *Sam Fox Publishing Co. v. United States*. * * * [T]he Court pointed out in *Sam Fox* that the two elements required by 24(a)(2) could never coexist and thus the section was a nullity in class actions." (Cohn, *The New Federal Rules of Civil Procedure*, 54 Geo. L.J. 1204, 1230 (1966).)

Noting that the *Sam Fox* dilemma rendered intervention impossible in all suits involving representation of absent interests (54 Geo. L.J. 1204, 1230 n.106), Professor Cohn concluded:

"The new rule seems to have solved the res judicata problem under the old rule while retaining the requirement of inadequate representation. *It appears to be more in line with the practice prior to the federal rules and with the original intent of the draftsmen and the court to codify and amplify that prac-*

*tice."* (Emphasis added.) (54 Geo. L.J. 1204, 1231.)

In other words, after Federal interpretation of the predecessor rule led down a logical *cul-de-sac*, the successor Federal rule returned to the path of common sense.

The Illinois supreme court never adopted the *Sam Fox* rationale, instead wisely and consistently treading the road to a practical civil procedure. Our supreme court interprets "will or may be bound" to require an interest greater than that of the general public, such that a party will stand to benefit or suffer by the legal operation of a judgment, but the court has rejected the requirement of a direct interest in the suit. (*Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 112, 417 N.E.2d 1343; *Mensik v. Smith* (1960), 18 Ill. 2d 572, 590, 166 N.E.2d 265; *Dowsett v. City of East Moline* (1956), 8 Ill. 2d 560, 567, 134 N.E.2d 793.) For reasons we will belabor no longer, petitioner for intervention has fulfilled this requirement.

■■ Finally, returning to the adequacy of representation issue, defendants argue that our opinion will paralyze the city's efforts to enforce the building code against condominium properties by requiring the city to join all unit owners. We observe that the city did not advance this argument on its own behalf. We do not believe that our opinion is subject to any such interpretation. We did not hold that a condominium association *cannot* represent its members, but merely stated that the association here *did not* represent the interest of this petitioner. Nor did we hold that unit owners were *necessary* parties, but only that a petitioner who undertakes the effort and expense to intervene should receive such consideration as the statute warrants. If another unit owner wishes to intervene, that person also must show that his or her interest is sufficient, and that such interest is inadequately represented by existing parties, including the present intervenor. (See Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv. L. Rev. 721, 747 (1968).) In our view, the letter and spirit of the statute can only be advanced by allowing intervention in this case.

For the foregoing reasons defendants' petition for rehearing is denied.

SULLIVAN and O'CONNOR, JJ., concur.